*480 OPINION
Whitaker, Judge,
delivered the opinion of the court:
Plaintiff, a steamship company flying the flag of the United States, sues to recover charges for the carriage of mails originating in Brazil. The obligation of the United *481 States, if any, arises under the Postal Convention of August 12,1937 (50 Stat. 1657). This provides in part:
Article 3
TREE AND GRATUITOUS TRANSIT
1. The gratuity of territorial, fluvial and maritime transit is absolute in the territory of the Postal Union of the Americas and Spain; consequently, the countries which form it obligate themselves to transport across their territories, and to convey by the ships of their registry or flag which they utilize for the transportation of their own correspondence, without any charge whatsoever to the contracting countries, all that which the latter send to any destination.
2. In cases of reforwarding, the contracting countries are bound to reforward the correspondence by the ways and means which they utilize for their own dispatches.
It is agreed between the parties that the United States would be liable under this convention unless relieved from liability by the provisions of Brazilian decree No. 3.326 of June 3,1941.
At the hearing of this case the parties stipulated in part as follows:
3. That under said Convention the United States was responsible to plaintiff’s United States flag vessels which carried Convention mails tendered by the other signatories for payment for said carriage at the applicable rate set forth in the United States Postal Regulations, upon appropriate documentary proof of carriage in form acceptable to the United States Post Office; except where such carriage was required by Argentina, Uruguay, and Brazil under their respective packet laws and regulations issued thereunder.
4. That the plaintiff asked and received packet privileges for its vessels under the packet laws and regulations of Argentina, Uruguay, and Brazil; and that the plaintiff’s vessels received certain benefits under said laws and were obligated to perform certain burdens under said laws.
5. The present case is limited to a determination of whether under the applicable packet laws of Argentina, Uruguay, and Brazil, those countries imposed the obliga *482 tion upon the plaintiff’s vessels of transporting the respective Argentina, Uruguayan, and Brazilian mails gratuitously.
* * ' . • * * *
Plaintiff in its petition sought to recover from the United States for the carriage of north-bound mail also from Argentina, and from Uruguay, but at the hearing plaintiff abandoned its claim for the carriage of mails from Argentina and also for the carriage of mails from Uruguay, except for that carried during the war period of July 1, 1940, until February 26, 1942, the date the defendant requisitioned plaintiff’s vessels. The claim was abandoned because Argentina and Uruguay, in return for certain packet privileges, obligated plaintiff and others to carry its mails gratuitously, except during the war period when packet privileges were withdrawn by Uruguay. The parties now agree that if the Brazilian decree of June 3, 1941, required plaintiff to carry Brazilian mails gratuitously, then the United States is not liable therefor.
This decree of June 3,1941, provides:
* * * * *
ARticle 1. Transportation of articles of correspondence and of postal dispatches shall be made :
I. On overland routes:
(a) by foot or mounted messengers, or in suitable vehicles, on public highways;
(b) in special or ordinary carriages or cars, on railroads.
II. On fluvial, maritime and lacustrine routes:
(a) In Brazilian vessels of any description;
(b) In steamships or packets belonging to foreign carriers, whether subsidized or not, sailing regularly between ports of Brazil and those of foreign countries.
III. On aerial routes:
(a) In Government airplanes or airships employed in the postal service;
(b) In airplanes or airships belonging to domestic or foreign carriers, whether subsidized or not, performing regular trips between airfields located on Brazilian territory, or between Brazil and other countries.
Article 2. It shall be obligatory for all fluvial, lacustrine and maritime carriers or companies of navigation and for Federal, State, or Municipal railroads, *483 to transport postal dispatches and articles of correspondence gratuitously^ without limitation on-weight or volume. ■ . -
❖ * ❖ , ^ *
We are not furnished with any authoritative interpretation of this decree. .
. After this suit was filed plaintiff requested the Postmaster General of Brazil to write the' Postmaster General of the United States to advise him- whether or not this decree required plaintiff to carry Brazil mails gratuitously. The Postmaster General of Brazil advised the Postmaster General of the United States that it did not, but apparently this official was not authorized to give any binding interpretation of Brazilian laws. That function seems to have been vested in the Legal Counsellor in the Brazilian Department of Justice, subject to the approval of the President. This officer has not expressed an opinion as to the effect of this decree of June 3,1941.
Except for the interpretation placed on the decree by the. Post Office Department of Brazil, we are aided only by an opinion expressed by one Isidoro Zanotti, a Brazilian lawyer formerly in the Department of Justice at Eio de Janeiro, and by an opinion expressed by Richard P. Momsen, a Brazilian lawyer. Mr. Zanotti expressed the opinion that this decree did impose upon plaintiff the obligation to carry these mails gratuitously. Mr. Momsen, an American citizen and an eminent member of the Brazilian bar, expressed a contrary opinion.
In view of these conflicting opinions, we must set ourselves to the task of construing the decree ourselves.
Article I of the decree sets forth those means of transportation by which the mails of Brazil are authorized to be carried. Among them are “steamships ■ or packets belonging to foreign carriers, whether subsidized or not, sailing regularly between ports of Brazil and those of foreign countries.” After having so provided, the decree in Article 2 provides that “it shall be obligatory for all fluvial, lacustrine and maritime carriers or companies of navigation and for Federal, State or Municipal railroads, to transport postal dispatches and articles of correspondence gratuitously, without limitation on weight or volume.”
*484 Having first set out the various means for the carriage of mails, including people such as plaintiff, that is, “steamships or packets belonging to foreign carriers” etc., the decree then says that it shall be obligatory on all these means to transport the mails gratuitously.
The quotation is from the English translation of the decree. The English word “all” is a translation of the Portuguese word “todas.” The literal translation of this word is “each and every.” The decree, therefore, says that each and every one of the “fluvial, lacustrine and maritime carriers”' are obligated to carry the mails gratuitously. This means, of course, each and every one of those “fluvial, lacus-trine and maritime carriers” mentioned in the preceding article.
The obligation cast upon carriers such as plaintiff by this decree was not without consideration. It was an obligation imposed in return for the grant of certain packet privileges. Among these privileges were exemption from lighthouse dues, charity taxes imposed on each sailor and officer, and the grant of preferred berthing rights. By the acceptance of these privileges plaintiff obligated itself to carry Brazilian mails gratuitously, and the parties agree that if the Brazilian decree be so construed, that the United States is not liable under the Postal Convention.
This conclusion is fortified somewhat by the fact that not until it put in its proof in this case in 1946 did plaintiff present any detailed claim to the United States Post Office for the carriage of Brazilian mails from 1941 on. Such long delay indicates that plaintiff was under the impression that the United States was not liable therefor.
It is agreed, however, that the United States is liable to plaintiff for the carriage of Uruguayan mails for the period from July 1, 1940, to February 26, 1942, during which time Uruguay had suspended packet privileges. ' (On February 26, 1942, the defendant requisitioned plaintiff’s vessels.) The amount due therefor is $7,570.58.
It is also agreed that the United States is liable to plaintiff for the carriage of Brazilian mails from February 20, 1940, to June 3,1941, in the amount of $43,198.56.
*485 Judgment is rendered in plaintiff’s favor against the United States for the amount of $50,769.14.
Howell, Judge; MaddeN, Judge; LittletON, Judge; and JoNes, Chief Judge, concur.
ON PLAINTIFF’S MOTION FOR A NEW TRIAL
Whitaker, Judge,
delivered the opinion of the court:
Plaintiff filed a motion for a new trial, in which, among other things, it contends that the translation of the Brazilian decree, No. 3.326 of June 3, 1941, filed in evidence by the Government, and upon which the court relied in its opinion of April 3, 1951, was incorrect. Plaintiff attached to its motion a translation by a public translator in Brazil which differs somewhat from the translation put in evidence by the Government and relied upon by the court. Plaintiff designates the translation attached to its motion as newly discovered evidence and says that it was not for want of due diligence that this translation did not sooner come to its knowledge.
In the Government’s brief, supported by an affidavit from the Government’s counsel in the case, it is stated that the original Portuguese text of this decree with the translation was submitted to plaintiff’s attorney in October 1947, with the suggestion that he check with his people in Brazil to ascertain whether or not transportation of Brazilian mails by plaintiff was obligatory under Article 2 of the decree.
Plaintiff’s attorney did communicate with a Brazilian lawyer, a Dr. Richard Momsen, who did not question the translation of the decree. Indeed, when this lawyer was placed on the stand by plaintiff in the trial of this case, he was asked whether or not the translation of the decree introduced by the Government was correct. He replied:
The only difference I find in Article I, Paragraph II, Subparagraph b, in English you say “carriers,” and in Portuguese “emprases,” which means “company.”
That is a little closer. Otherwise it appears to correspond.
It, therefore, appears that plaintiff had ample opportunity to check the accuracy of the translation. If it desired *486 to question its correctness, it should have done so long before this.
Besides, we are of the opinion that the translation was correct. It was translated by a Mr. Everhardy, who at the time was a translator in the Treasury Department. In Mr. Ever-hardy’s affidavit he says that before he translated the decree he had received no instructions as to the purpose of the translation, nor had he discussed it with any Government lawyer, and that he translated it impartially and to the best of his ability. It was also translated by Eugene Dernay, who at the time was an employee of the Post Office Department. Mr. Dernay makes, a similar affidavit. Their translations are substantially the same.
Moreover, our decision would probably have been the same had plaintiff’s translation of the decree been before us. According to this translation, Article 2 relates only to Federal, State and Municipal transportation companies; but in paragraph 1 under Article 2 the translation reads:
The transportation shall likewise be obligatory and gratuitous as regards railroads and companies or enterprises engaged in navigation or highway traffic which enjoy special treatment, benefits or favors from the Union, the States or the Municipalities.
It is admitted that. plaintiff did enjoy special treatment from the Union, and, therefore, presumably it comes within the companies mentioned in paragraph 1 of Article 2.
Nor do we think the other grounds for a motion for a new trial are well taken. It will be overruled.
Howell, Judge; MaddeN, Judge; LittletoN, Judge; and JoNes, Chief Judge, concur.